IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

JUN 17 2010

Alexandria Division

David Atkins,                    )
        Plaintiff,                )
                                  )
v.                                )        1:09cv839 (LMB/IDD)
                                  )
Khairul B. Emram, et al.,         )
        Defendants.                )

MEMORANDUM OPINION

David Atkins, a former Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional right to reasonable medical care. On February 26, 2010, defendant Emram filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim.[1] Defendants Pruett, Stephens, and Shear have not filed dispositive motions, but they did file an Answer to the complaint on November 12, 2009. Plaintiff was given the opportunity to file responsive materials to Emram's Motion to Dismiss, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response. Plaintiff has also filed a Motion to Appoint Counsel, and Emram has moved to dismiss the complaint for plaintiff's failure to adhere to the Court's May 17, 2010 Order. For the reasons that follow, plaintiff's request for counsel will be denied, Emram's Motion to Dismiss for Failure to Comply with Court's Order will be denied, Emram's Motion to Dismiss for Failure to State a

---

[1] In the Motion, Emram references only plaintiff's Amended Complaint ("Am. Compl."), not his Initial Complaint. As the October 13, 2009 Order granting plaintiff leave to amend his complaint included no directive that the Amended Complaint would serve as the sole complaint, and as it was clear that plaintiff sought to elaborate in his Amended Complaint on the claims raised in his Initial Complaint, the Court construes Emram's references to "Amended Complaint" as references to both the Initial Complaint and the Amended Complaint.

Claim will be granted, and the claims against all defendants will be dismissed for failure to state a claim.[2]

## I. Background

Plaintiff was incarcerated at Coffeewood Correctional Center until his release in late 2009. Plaintiff suffers from hypoglycemia, which he alleges can result in episodes of headaches, dizziness, and seizures if his blood sugar drops. In the past few years, several doctors, including at one point defendant Dr. Emram,[3] recommended that plaintiff receive a double portion diet. Based on exhibits submitted by plaintiff, he began receiving the double portion diet on June 15, 2007. In August 2009, plaintiff's double portion diet was discontinued and he was switched to a high protein, low carbohydrate diet, although he continued to receive snack bags to supplement his regular meals. Am. Compl. Ex. AA. Plaintiff argues that all four defendants played a role in removing him from the double portion diet, in violation of his right to reasonable medical care.

Specifically, plaintiff alleges that defendant Pruett, the warden, "ordered the doctor" to stop plaintiff's double portion diet and that the defendants "conspired" to find a reason to avoid serving plaintiff a double portion diet. Am. Compl. 3-4. An email chain submitted by the plaintiff as an attachment to his Amended Complaint, however, reflects that the decision to change plaintiff's diet was a result of many conversations between Warden Pruett, chief physician Dr. Stephens, institutional physician Dr. Emram, and prison dietician Linda Shear, in an attempt to find a "generally recognized dietetic approach for hypoglycemia that is practical for incarcerated individuals." Am. Compl. Ex. AA. Specifically, Warden Pruett was concerned

---

[2] Emram's Motion to Dismiss sufficiently addresses plaintiff's allegations against the other three defendants, and thus the case will be dismissed as to all defendants.

[3] On February 2, 2009, Emram recommended that plaintiff receive double portions. Am. Compl. Ex. E.

that by serving plaintiff two full meals three times a day, correctional center staff members are unable to monitor adequately what plaintiff was consuming.[4] The email chain, which consisted of messages exchanged among all of the defendants over a period of several days in June and July 2009, shows that Dr. Stephens and Dr. Emram recommended that plaintiff be placed under continuous medical observation to enable medical staff to determine the cause of his hypoglycemia, the frequency of his episodes, the amount of food plaintiff consumed daily, and his requirement for snacks to prevent episodes. Am. Compl. Ex. AA. Linda Shear suggested providing plaintiff with hard boiled eggs or peanut butter as a snack, noting that these foods contain higher quality protein than milk. Am. Compl. Ex. D. After Dr. Emram and Dr. Stephens evaluated his condition, and after plaintiff was examined by an endocrinologist, plaintiff's diet changed on August 27, 2009. Am. Compl. Ex. C, Ex. I. Plaintiff's new diet consisted of a high protein, low carbohydrate meal three times a day, as well as a snack bag three times a day. Am. Compl. Ex. C. As the chief physician and medical director of Coffeewood Correctional Center, Dr. Stephens officially approved the changes in plaintiff's diet. Am. Compl. Ex. AA.

Plaintiff concedes that during his confinement at Coffeewood, he received extensive medical care. Specifically, he admits that Dr. Emram examined him "on many occasions" and directed plaintiff to exercise for only fifteen minutes at a time, due to his medical condition. Am. Compl. 2. An exhibit submitted by plaintiff shows that Emram also referred plaintiff to the

---

[4] Specifically, Pruett stated in an email sent to the other defendants that plaintiff's double portion diet "appears to be an open invitation for abuse by the offender. According to staff observations, the offender picks and chooses what items he will eat from the trays that he is served. This means there is no effective control at all on the amount or type of food he consumes because he gets to select what he wants to eat. How do we know what items he consumes or doesn't consume? If he consumes all of the items on the trays and the snack bags, this could amount to over 5 thousand calories per day . . . I am not questioning the medical necessity of additional caloric intake for certain medical conditions. I am only concerned that it be done in a rational and consistent process." Pruett also notes that "[i]n over 30 years in the corrections business, I have never seen a case where an offender was directed to receive two full trays of food at each meal plus two 'snack bags' twice a day as a therapy for hypoglycemia." Am. Compl. Ex. AA.

3

endocrinology department at the University of Virginia Hospital on August 7, 2009. Am. Compl. Ex. I. After plaintiff was examined by the endocrinologist, the endocrinologist recommended that plaintiff receive a high protein, low starch diet, which was later ordered by Dr. Stephens. See Informal Complaint and Response, filed Aug. 6, 2009. On August 10, 2009, Dr. Emram saw plaintiff and explained that the endocrinologist recommended that Dr. Emram draw plaintiff's blood during a low blood sugar period. Plaintiff was advised to stay in the medical ward under supervision during this test, but apparently he refused to do so. See Informal Complaint and Response, dated Aug. 6, 2009.

Plaintiff has filed several requests for injunctive relief, expert testimony, and the production of documents, which were denied. He seeks $500,000 in damages and the reinstatement of his double portion diet.[5]

## II. Supplemental Motions

1. Plaintiff's Motion to Appoint Counsel

This is plaintiff's second request for the appointment of counsel. See Docket # 15. As explained to plaintiff in the October 13, 2009 Order denying his first request, a court may appoint an attorney to represent an indigent plaintiff proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). The Fourth Circuit, however, has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). It is unnecessary to appoint counsel for plaintiff, as plaintiff has made no showing of "exceptional circumstances" in his case that would warrant appointment of counsel. In addition, to date, plaintiff has ably filed his pleadings and replied to various orders,

---

[5] Because plaintiff has been released, his request for injunctive relief is moot.

4

as well as demonstrated comprehension of the procedures and laws of this Court. Thus, plaintiff's request for the appointment of counsel will be denied.

2. Defendant Emram's Motion to Dismiss for Failure to Comply with Court's Order

In addition to moving to dismiss the complaint pursuant to Rule 12(b)(6), Emram has also moved to dismiss the complaint for plaintiff's failure to submit a proposed discovery plan in accordance with the Court's May 17, 2010 Order. Specifically, Emram argues that plaintiff's May 28, 2010 letter, in which plaintiff states that he had previously filed a discovery plan and asks "that that discovery be used" as his plan, does not constitute compliance with the Order. District courts have a duty to construe filings by pro se litigants liberally. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). While Emram correctly notes that even pro se litigants are required to comply with court rules, the plaintiff clearly attempted to comply with the Order, and the Court does not hold pro se litigants to the same standards as attorneys. Accordingly, Emram's Motion will be denied.

### III. Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss claims based upon dispositive issues of law. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . .". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50. Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

## IV. Merits

Plaintiff has failed to state a claim that any of the defendants violated his Eighth Amendment right to reasonable medical care. It is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To have such a claim rise to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. Thus, plaintiff must first demonstrate a sufficiently serious medical need. See, e.g., Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, plaintiff must show deliberate indifference to that serious medical need; mere

6

negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. Additionally, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

Assuming without deciding that hypoglycemia constitutes a serious medical need, taking plaintiff's allegations as true and considering the exhibits plaintiff attached to his Complaint and Amended Complaint, none of the defendants exhibited deliberate indifference to plaintiff's medical condition. By contrast, plaintiff's allegations and exhibits reflect that plaintiff received extensive medical treatment for his hypoglycemia, and defendants worked together and heeded the advice of an endocrinologist to establish a satisfactory diet for plaintiff. As Emram notes in the Memorandum in Support of his Motion to Dismiss, the defendants showed a reasonable approach to treating plaintiff's condition. Specifically, Dr. Emram personally examined plaintiff frequently and ensured that plaintiff was treated by a specialist. Moreover, he suggested procedures which plaintiff apparently refused. Dr. Stephens recommended that plaintiff be monitored closely to determine how his illness manifested itself, which hardly suggests deliberate indifference. Linda Shear proposed several snack options to ensure that plaintiff consumed enough protein to keep his hypoglycemia episodes at bay. Finally, nothing in plaintiff's allegations or exhibits suggests that Warden Pruett's reasonable concerns with institutional efficiency and economics superseded plaintiff's well-being.

It appears clear that plaintiff would have preferred to have two full meal trays served to him at every meal throughout his incarceration. However, nothing in plaintiff's Complaint, Amended Complaint, or exhibits suggest that a double portion diet was a medical necessity for plaintiff. Moreover, there is no indication that plaintiff suffered any serious harm as a result of the replacement of his double portion diet with a high protein, low carbohydrate diet that includes snacks. At most, plaintiff voices disagreement with the medical decisions made by defendants, which is insufficient to state an Eighth Amendment violation. Therefore, plaintiff has failed to state a claim of violations of his right to reasonable medical treatment, and the case will be dismissed.

## V. Conclusion

For the reasons stated above, Emram's Motion to Dismiss for Failure to State a Claim will be granted, and the claims against the other defendants will be dismissed as well. Additionally, plaintiff's request for the appointment of counsel and Emram's Motion to Dismiss for Failure to Comply with Court's Order will be denied. An appropriate order shall issue.

/s/ _____  6/17/10
Leonie M. Brinkema
United States District Judge